

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-078-CR

RUTH ELAINE ADKINS                                          APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

## OPINION

------------

Appellant Ruth Elaine Adkins appeals her conviction for aggravated assault with a deadly weapon.  In two issues, she contends that the evidence is legally and factually insufficient to support her conviction for aggravated assault, and that the trial court erred by refusing her requested jury charge on a lesser-included offense.  We affirm.

## I. Background

Appellant lived in Hood County, Texas, for about ten years along with her two children, James Arthur Newell and Jennifer Louise Newell. Appellant used methamphetamine for most of those years. She got methamphetamine from her son, James, supplied methamphetamine for her daughter, Jennifer, and smoked methamphetamine with both of her children. James had previously been to prison and was a member of the Aryan Brotherhood prison gang.

When Jennifer and her boyfriend, James Padgett, began "shooting up" with methamphetamine, appellant became upset and angry. Appellant accused Padgett of "making Jennifer pass out" and then "doing sexual things" with her. Appellant even choked Padgett in her driveway because she was so angry over his drug use with Jennifer.

In April 2006, Jennifer and Padgett broke up briefly and Jennifer moved back in with appellant. Appellant told Jennifer she knew what Jennifer and Padgett were doing, she was mad about it, and, if she had anything to do about it, they would "never get back together." Shortly thereafter, appellant's son, James, brought Robert Byrd, another Aryan gang member, to appellant's home for a meeting.

Around April 29, 2006, appellant and James were at a gathering in Brazos River Acres where everyone was drinking beer and hanging out on the

2

beach. Appellant told a friend and neighbor, Arvil Wayne Lee, that she was upset and she was going to "get even" with Padgett because he was shooting up her daughter. She said she had friends who would take care of Padgett for her, and that she "had [the situation] under control." That evening, appellant's son, James, asked Arvil to "be his alibi."

A few days later, appellant met with Johnny Freeman, another Aryan gang member, at Johnny's residence. Johnny then went to Cleburne to meet with fellow Aryan gang member, Robert.

On May 6, 2006, Robert and Daniel Roof, yet another Aryan gang member, contacted Jennifer Perez about borrowing her truck for some "errands" around Granbury. Rather than allow them to take her truck, Perez insisted on accompanying the men. Daniel and Robert met Johnny at his residence. Johnny told his girlfriend, Amber Gorman, he needed to "take care of some business" with some friends and that he would meet her later that day. The three men talked together in a back room. Daniel, Robert, Johnny, and Perez then drove to a convenience store where they met James and appellant and talked for about fifteen minutes.

After meeting with appellant, Daniel, Robert, and Johnny went looking for Padgett. On the way to Padgett's house in Oak Trail Shore, they talked about how Padgett was hurting James's sister, Jennifer. When they got to Padgett's

3

house, Jennifer answered the door and told them that Padgett was not home, so they left. On their way out of the Oak Trail Shores neighborhood, they saw Padgett entering the gates and turned around. After stopping Padgett's vehicle, they jumped out of the truck with knives in hand. About five minutes later, they returned to the truck with blood on them and breathing heavily. As they left the scene, Robert used a stuffed animal in the truck to wipe the blood off his arm and then threw the bloodied toy, as well as the knives, out of the truck window. The three men then bought some new clothes at a Wal-Mart, stopped at a truck stop to change, and drove to a motel in Desoto, Texas.

When Johnny's girlfriend, Amber, returned home late that afternoon and found that Johnny was not home, she called several people, including appellant, looking for Johnny. Appellant told Amber that there had been a stabbing in Oak Trail Shores and that the police thought Johnny did it. Shortly thereafter, appellant called Amber and asked her to meet appellant at Brazos River Acres. Once there, appellant told Amber that Johnny wanted to meet them in Hillsboro.

Appellant and Amber drove to Hillsboro, where they met Robert and Johnny at a gas station. Amber noticed that the men were wearing different clothes than they had been wearing earlier. Appellant rented a nearby motel room where the four of them went to talk.

4

While in the motel room, Robert detailed Padgett's stabbing. He acted proud of what he had done, and appellant appeared happy and excited. The more Robert talked about the stabbing, the more excited and "turned on" appellant became.

Appellant and Robert stepped out for about thirty minutes while Johnny and Amber talked inside the motel room. Johnny cried as he told Amber about the stabbing. When appellant and Robert returned to the room, appellant's demeanor had changed from excited and "turned on" to relaxed and calm. Appellant told Amber that she needed to go to the bathroom to "wipe herself," which Amber understood to mean that appellant and Robert had just engaged in sex. The next day Amber, Johnny, and appellant went to Glen Rose. Robert did not accompany them.

Padgett was airlifted to Harris Methodist Hospital in Fort Worth after the stabbing. Having suffered massive blood loss, he underwent surgery to repair multiple stab wounds in his heart and his torso. He was eventually transferred to a nursing home facility where he died of pneumonia nearly a year later. The medical examiner listed Padgett's cause of death as complications from multiple stab wounds.

A Hood County grand jury indicted appellant in July 2006 for aggravated assault with a deadly weapon.

Before testifying at trial, Amber received threats from members of the Aryan Brotherhood and Aryan Circle concerning her testimony. Jennifer also feared retaliation from the Aryan gang members. On February 12, 2008, a jury convicted appellant of aggravated assault with a deadly weapon and sentenced appellant to twenty years in prison and a fine of $10,000.

## II. Sufficiency of the Evidence

In her first issue, appellant contends that the evidence is legally and factually insufficient to prove that she knew a deadly weapon would be used in the assault or that she contributed in some part toward the execution of the attack. Appellant asserts that the evidence establishes only that she is guilty of assault.

## A. Standard of Review

In reviewing legal sufficiency, we consider all the evidence in the light most favorable to the verdict and determine whether a rational juror, based on the evidence and reasonable inferences supported by the evidence, could have found the essential elements of the crime beyond a reasonable doubt.[1] We defer to the "responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic

---

[1] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

6

facts to ultimate facts."[2] The jury is permitted to draw multiple inferences as long as each inference is supported by the evidence presented at trial.[3] Each fact need not point directly and independently to appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.[4] Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to support a conviction.[5] On appeal, the standard of review is the same for both circumstantial and direct evidence cases.[6]

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[7] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly

---

[2] *Jackson*, 443 U.S. at 318–19, 99 S. Ct. at 2789; *Hooper*, 214 S.W.3d at 13.

[3] *Hooper*, 214 S.W.3d at 15.

[4] *Id.* at 13; *see Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied,* 511 U.S. 1046 (1994).

[5] *Hooper*, 214 S.W.3d at 13; *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

[6] *Hooper*, 214 S.W.3d at 13; *Guevara*, 152 S.W.3d at 49.

[7] *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust.[8] To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict.[9]

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by evidence that is legally sufficient, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction."[10] We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence.[11] We may not simply substitute our judgment for the factfinder's.[12] Unless the record clearly reveals that a different result is

---

[8] *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

[9] *Watson*, 204 S.W.3d at 417.

[10] *Id*.

[11] *Id*.

[12] *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered."[13] Thus, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[14]

### B. Elements of Aggravated Assault

A person commits aggravated assault when he or she commits an assault as defined in Texas Penal Code section 22.01 while using or exhibiting a deadly weapon.[15] Assault is intentionally, knowingly, or recklessly causing bodily injury to another.[16]

### C. Criminal Responsibility for Aggravated Assault as a Party

A person may be convicted of aggravated assault as a party "if, acting with intent to promote or assist the commission of the aggravated assault, he or she solicits, encourages, directs, aids, or attempts to aid" another person to

---

[13] *Johnson*, 23 S.W.3d at 8.

[14] *Id*. at 9.

[15] Texas Penal Code Ann. § 22.02(a)(2)(Vernon Supp. 2008).

[16] *Id.* § 22.01(a)(1).

9

commit the aggravated assault.[17] The intent to promote or assist in the commission of the offense goes to each element of the offense charged.[18] We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act."[19]

When a deadly weapon is alleged in the indictment as an element of the offense, the jury is authorized to find the defendant guilty as a party only if the State meets its burden of proving beyond a reasonable doubt that the defendant knew a deadly weapon would be used or exhibited.[20] If the jury returns a verdict of guilty as charged in the indictment, we presume that the jury has implicitly found beyond a reasonable doubt that the defendant used or exhibited

---

[17] *See* Texas Penal Code Ann. § 7.02(a)(2)(Vernon 2003); *Hooper*, 214 S.W.3d 14 n.3; *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd).

[18] *See Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986); *Duke v. State*, 950 S.W.2d 424, 427 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd).

[19] *Hooper*, 214 S.W.3d at 13 (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied*, 476 U.S. 1101 (1986)).

[20] Tex. Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (Vernon Supp. 2008); *Sarmiento v. State*, 93 S.W.3d 566, 570 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Barnes v. State*, 62 S.W.3d 288, 303–04 (Tex. App.—Austin 2001, pet. ref'd); *Taylor v. State,* 7 S.W.3d 732, 740–41 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

a deadly weapon or, if acting as a party, knew that a deadly weapon would be used or exhibited.[21]

## D. Analysis

In this case, the jury implicitly found beyond a reasonable doubt that appellant knew a deadly weapon would be used. The evidence supporting this implied finding is as follows:

Appellant was angry at Padgett and blamed him for her daughter's injecting methamphetamine. She had told her daughter that, if she had her way, the two would never get together again. Appellant admitted at trial that she wanted someone to beat Padgett up for her. She had bragged to a friend and neighbor that she was going to stop Padgett, that she had a lot of friends, and that she had the matter "under control." During the same conversation, her son, James, a member of the Aryan Brotherhood gang, asked the neighbor to be his "alibi." Appellant asked Johnny, also an Aryan gang member and someone whom appellant considered a "tough guy," to beat up Padgett for her. A week before the attack, Robert visited James at appellant's home while appellant was present. Less than an hour before the stabbing, appellant and James met the attackers at a convenience store. Immediately after the attack,

---

[21] *Sarmiento*, 93 S.W.3d at 570; *see Polk v. State*, 693 S.W.2d 391, 394 (Tex. Crim. App. 1985).

when appellant got word that Padgett had been stabbed, the evidence shows that appellant knew who was responsible. Appellant's daughter, Jennifer, believed appellant was behind the attack. Appellant drove the girlfriend of one of the attackers to Hillsboro, rented a motel room for all the attackers, and listened with apparent approval as Robert relayed the details of the stabbing. The girlfriend testified that, as Robert spoke, appellant got more and more excited and apparently engaged in sex with him after he had finished his account.

Viewing this direct and circumstantial evidence in the light most favorable to the verdict, we hold that a rational jury could reasonably infer that appellant solicited and encouraged the attack, was aware that it would involve the use of a deadly weapon, and condoned its execution after it was accomplished. Therefore, the evidence is legally sufficient to support the verdict.

Furthermore, when we examine all the evidence in a neutral light, we cannot say that this evidence is so weak as to render the verdict clearly wrong and manifestly unjust. Nor can we say the great weight and preponderance of the evidence contradicts the verdict.[22] The only evidence contrary to the

---

[22] *See Watson*, 204 S.W.3d at 417; *Brown v. State*, 212 S.W.3d 851, 863 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (op. on reh'g), *cert. denied*, 128 S. Ct. 1088 (2008).

verdict is the testimony of appellant's friend and neighbor, Arvil Wayne Lee, and of appellant herself. Arvil testified that he did not feel that appellant wanted Padgett killed. Although appellant admitted at trial she asked Johnny to beat up Padgett, she said she "never once wanted anyone harmed like that." She "figured that Johnny would kick his ass, like I asked him to. I never once thought that it would take more than Johnny to do what I asked." This testimony clearly does not outweigh the evidence showing that appellant solicited and encouraged the attack and was aware that it would likely involve the use of a deadly weapon. We, therefore, hold that the evidence is also factually sufficient to support the jury's implied finding that appellant knew a deadly weapon would be used.

Relying on our opinion in *Wooden v. State,*[23] appellant further contends that there is also no evidence that, at the time of the offense, appellant contributed in some part toward the execution of the attack. *Wooden* is inapposite to this case.

In *Wooden*, the appellant contended that the evidence was legally insufficient to prove that he was a party to aggravated robbery because it showed he was merely present at the scene of the offense and assisted in the

---

[23] 101 S.W.3d 542 (Tex. App.—Fort Worth 2003, pet. ref'd).

13

getaway. The question before the court was, therefore, whether proof that an accused is present at the scene of a crime or assists in a getaway, standing alone, is sufficient to prove whether the accused is guilty as a party.[24] We concluded it was not. Rather, we held that when the accused is present at the scene of a crime, "[t]he evidence must show that at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose."[25] Because there was no evidence that Wooden knew a gun was used or exhibited in the robbery, we held that the evidence was insufficient to prove Wooden was a party to the aggravated robbery even though he facilitated the getaway. We did not address the circumstances presented here where the accused is *not* present at the scene of the crime, but acting with intent to promote or assist the commission of an offense, solicits and encourages the other person to commit the offense *before* the offense is committed.[26]

---

[24] *Id*. at 546.

[25] *Id*.; *see also Brooks v. State*, 580 S.W.2d 825, 831 (Tex. Crim. App. 1979) (holding that under former party statute, in instances where the accused is present during the commission of an offense, evidence must show that the accused encouraged the commission of the offense by acts, words, or other assistance).

[26] Tex. Penal Code Ann. § 7.02(a)(2).

14

Here, the evidence shows that appellant, acting with intent to promote the commission of the aggravated assault, solicited and encouraged Johnny to commit the offense. The fact that she was not physically present when the offense was committed and did not contribute some part to the stabbing of Padgett at the time of the offense is immaterial under the circumstances of this case. As we observed in *Wooden*, section "7.02(a)(2) does not require that a party's actions constitute one or more elements of the intended offense, only that the party's actions show the intent to promote or assist the offense and that the party encouraged, solicited, directed, or aided the commission of the offense."[27] The plain language of section 7.02(a)(2) requires nothing more, and we are not inclined to rewrite the statute to require more than the legislature intended.

We overrule appellant's first issue.

### III. Lesser Included Offense

In issue two, appellant claims that the trial court erred in refusing her requested jury charge on assault as a lesser included offense. Appellant contends that there is some evidence that she was unaware that a deadly weapon would be used. She argues that since the aggravated assault charge

---

[27] *Wooden*, 101 S.W.3d at 548 n.1; *see* Tex. Penal Code Ann. § 7.02(a)(2).

was based on use of a deadly weapon, any evidence that she was unaware that a deadly weapon would be used is some evidence that she was not liable for the aggravating element and therefore, if guilty, guilty only of assault.

We use a two-step analysis to determine whether appellant was entitled to a lesser included offense instruction.[28] First, the lesser offense must come within article 37.09 of the code of criminal procedure.[29] Article 37.09(3) provides, "An offense is a lesser included offense if . . . it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission.[30] Assault satisfies this first step.[31]

The next step is to determine whether some evidence exists that would permit a jury to rationally find that if appellant is guilty, she is guilty only of the lesser offense.[32] This step acknowledges that there are factual circumstances in which an offense is indeed a lesser included offense under the first step, but

---

[28] *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).

[29] Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

[30] Tex. Code Crim. Proc. Ann. art. 37.09(3) (Vernon 2006).

[31] *Ferrel v. State*, 55 S.W.3d 586, 589 (Tex. Crim. App. 2001).

[32] *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73.

16

a jury charge instruction is not required because the condition—that the defendant is not guilty of the greater offense but is guilty only of the lesser—is not met.[33]  In such a case, the offense remains a lesser included, but the trial court is not required to instruct the jury on it.[34]

The evidence must be evaluated in the context of the entire record.[35] There must be some evidence from which a rational jury could acquit the defendant of the greater offense while convicting her of the lesser.[36]  The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence.[37]  Anything more than a scintilla of evidence may be enough to entitle a defendant to a lesser charge.[38]  A charge on the lesser included offense is not required when the defendant presents no evidence or presents evidence that no offense was committed and there is no evidence

---

[33]⬆ *Pickens v. State*, 165 S.W.3d 675, 679 (Tex. Crim. App. 2005); *see also Irving v. State*, 176 S.W.3d 842, 845–46 (Tex. Crim. App. 2005); *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005).

[34]⬆ *Pickens*, 165 S.W.3d at 679.

[35]⬆ *Moore*, 969 S.W.2d at 8.

[36]⬆ *Id.*

[37]⬆ *Id*.

[38]⬆ *Hall*, 225 S.W.3d at 536.

otherwise showing that the defendant is guilty of a lesser included offense.[39]

A defendant is entitled to a charge on assault only if there is more than a scintilla of evidence to show that, if guilty at all, the defendant is only guilty of assault.

There is nothing in the record of this case to suggest that appellant acted alone. The evidence is uncontroverted that she acted with others. Further, it is undisputed that appellant's cohorts used a deadly weapon in the offense and the evidence shows that the attack would not have occurred without appellant's encouragement. There is no evidence that the attackers would have acted without appellant's encouragement, or that they committed only an assault. The evidence was undisputed that Padgett was assaulted with knives that in their manner of use and intended use were capable of causing death or serious bodily injury.

Because there is no evidence that appellant acted alone and not as a party, or that the offense committed was a mere assault, the trial court did not abuse its discretion in refusing appellant's requested instruction on assault as a lesser included offense.[40] We overrule point number two.

---

[39] *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim. App. 2001).

[40] *See Moore*, 969 S.W.2d at 8; *Bruton v. State*, 921 S.W.2d 531, 537– 538 (Tex. App.—Fort Worth 1996, pet. ref'd)(Evidence that defendant

Having overruled all of appellant's issues, we affirm the judgment.


JOHN CAYCE,
CHIEF JUSTICE

PANEL:  CAYCE, C.J.; HOLMAN and GARDNER, JJ.

PUBLISH

DELIVERED:  December 4, 2008

---

aided accomplice who used deadly weapon was found sufficient to support defendant's guilt as a party to aggravated offense).