

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-13-00048-CR**
**NO. 02-13-00049-CR**

JOE FRANK DELACRUZ III                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

In three issues, Appellant Joe Frank Delacruz III appeals the revocation of his deferred adjudication community supervision in cause number 02-13-00048-CR and his convictions of aggravated robbery with a deadly weapon and failure to stop and render aid in cause number 02-13-00049-CR.  We affirm.

---
[1]*See* Tex. R. App. P. 47.4.

## II. Procedural Background

In January 2010, Delacruz entered an open plea of guilty to injury to a child resulting in serious bodily injury,[2] a first degree felony, in trial court cause number 1121915D (appellate cause number 02-13-00048-CR) and received ten years' deferred adjudication community supervision. In August 2012, the State filed a petition to proceed to adjudication, alleging that Delacruz had violated the terms and conditions of his community supervision by failing to report to his community supervision officer in May, June, and July 2012; by using drugs on April 12, 2012; and by failing to complete his ten-hour-per-month community service requirement for nine months.

In October 2012, Delacruz was indicted on robbery, aggravated robbery, aggravated assault, and failure to stop and render aid, all involving complainant Katie Davis and occurring on or about August 3, 2012. The State then filed its first amended petition to proceed to adjudication, adding the robbery, aggravated robbery, and aggravated assault allegations regarding Davis as paragraphs 1 through 6; adding that Delacruz had committed the theft of a glass bowl of a value of less than $50 dollars from Bobby Lizardo on or about August 3, 2012 in paragraph 7; and adding that Delacruz had failed to stop and render aid to Davis in paragraph 8. Paragraphs 9, 10, and 11 were renumbered allegations from the

---

[2]The full offense listed in the order of deferred adjudication and the judgment adjudicating guilt is "Injury to a child-intentionally and knowingly cause [sic] bodily injury or serious mental deficiency, impairment[,] or injury."

original petition, and paragraph 12 alleged that Delacruz had failed to notify his supervision officer within five days of changing his address.

At the combined revocation hearing and bench trial, Delacruz pleaded "not guilty" to robbery, aggravated robbery, aggravated assault, and failure to stop and render aid as alleged in the indictment, "not true" to paragraphs 1 through 8 of the State's first amended petition to proceed to adjudication, and "true" to paragraphs 9 through 12. The trial court convicted Delacruz of aggravated robbery causing bodily injury with a deadly weapon and sentenced him to twenty-five years' confinement. The trial court additionally convicted Delacruz of failure to stop and render aid under transportation code section 550.021(c)(2) and sentenced him to five years' confinement. The trial court also entered a judgment adjudicating Delacruz guilty of the original injury-to-a-child offense after finding true paragraphs 1 through 6 and 8 through 12 of the State's first amended petition to proceed to adjudication and assessed his punishment at forty years' confinement. The trial court set all of the sentences to run concurrently, and these appeals followed.

### III. Revocation

In part of his second issue, Delacruz complains that the trial court abused its discretion by finding by a preponderance of the evidence that he had committed aggravated robbery and aggravated assault with a deadly weapon

and revoking his community supervision.[3]   However, Delacruz pleaded true to four of the State's allegations, and a plea of true, standing alone, is sufficient to support the revocation.  *See Perry v. State*, 367 S.W.3d 690, 693 (Tex. App.— Texarkana 2012, no pet.) (citing *Moses v. State*, 590 S.W.2d 469, 470 (Tex. Crim. App. [Panel Op.] 1979)); *see also Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980) ("[O]ne sufficient ground for revocation will support the court's order to revoke probation."); *Cantu v. State*, 339 S.W.3d 688, 691–92 (Tex. App.—Fort Worth 2011, no pet.) ("Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a revocation order.").   Therefore, without reaching the merits of this portion of his argument, we overrule this part of his second issue.

---

[3]Although Delacruz argues that he would not have received a forty-year sentence without the "true" findings on paragraphs 1 through 6, as summarized by the trial judge during the punishment phase of the serious-injury-to-a-child offense, "[Delacruz] is here for throwing a child like a medicine ball," an offense to which Delacruz confessed in 2010.  The child's mother testified that she was told at the time Delacruz injured his three-month-old daughter that the child had "a 50/50 chance" of surviving the injury and regaining her sight.  The child was five years old at the time of the revocation hearing and trial, had regained some of her vision, still could not walk and talk correctly, had drooling problems, had not completed potty-training, and had just learned to feed herself.  She had to take medication twice daily to control seizures, and she continued to see a neurologist.  Further, Delacruz did not object to the forty-year sentence at the punishment hearing or in a motion for new trial, and the sentence is within the punishment range for a first-degree felony.  *See* Tex. Penal Code Ann. § 12.32 (West 2011), § 22.04(e) (West 2011 & Supp. 2013).

4

## IV. Sufficiency

In his first and third issues and in the remainder of his second issue, Delacruz argues that the evidence is insufficient to support finding him guilty of aggravated robbery with a deadly weapon and failure to stop and render aid.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Winfrey*, 393 S.W.3d at 771; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex.

Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

## B. Applicable Law

### 1. Aggravated Robbery with a Deadly Weapon

To prevail on its aggravated robbery with a deadly weapon charge, the State had to prove that Delacruz intentionally and knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of that property, caused bodily injury to Davis by hitting her with an automobile, which by the manner of its use or intended use was capable of causing death or serious bodily injury. *See* Tex. Penal Code Ann. §§ 29.02(a), 29.03(a) (West 2011); *see also White v. State*, 671 S.W.2d 40, 42 (Tex. Crim. App. 1984) (stating that violence accompanying escape immediately subsequent to an attempted theft can constitute robbery); *McCall v. State*, 113 S.W.3d 479, 480–81 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding evidence sufficient for aggravated robbery conviction when appellant abandoned cigarettes he had tried to steal and drove his car at complainant).

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of it, without the owner's effective consent. Tex. Penal Code Ann. § 31.03(a), (b)(1) (West 2011 & Supp. 2013). "In the course of committing theft" includes conduct that occurs in immediate flight after the attempt or

6

commission of theft.  *Id.* § 29.01(1) (West 2011).  A person commits the offense of attempt if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.  *Id.* § 15.01(a) (West 2011).

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.  *Id.* § 7.01(a) (West 2011).  Criminal responsibility for an offense committed by the conduct of another occurs if the actor, with the intent to promote or assist the commission of the offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  *Id.* § 7.02(a)(2) (West 2011); *see also Adkins v. State*, 274 S.W.3d 870, 877 (Tex. App.—Fort Worth 2008, no pet.) (stating that section 7.02(a)(2) does not require that a party's actions constitute one or more elements of the intended offense but only that the party's actions show the intent to promote or assist the offense and that the party encouraged, solicited, directed, or aided the commission of the offense).  In determining whether an individual is a party to an offense, we may look at events before, during, and after the commission of the offense and may rely on circumstantial evidence; there must be sufficient evidence of an understanding and common design to commit the offense.  *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012).  The mere presence of a person at the crime scene, or even flight from the scene, without more, is insufficient to support a conviction as a party to the offense.  *Id.*

7

### 2. Failure to Stop and Render Aid

A person commits an offense if he fails to stop or does not comply with the requirements of transportation code section 550.021. Tex. Transp. Code Ann. § 550.021(c) (West 2011 & Supp. 2013). Delacruz's indictment alleged that he

> intentionally or knowingly dr[o]ve a vehicle which became involved in an accident resulting in injury to Katie Davis, and . . . did thereafter, knowing said accident had occurred, intentionally or knowingly leave the scene of said accident, without giving his name and address to any person, and without rendering reasonable assistance to Katie Davis when it was then apparent that Katie Davis was in need of medical treatment.

*See id.* §§ 550.021(a), .023 (West 2011). Transportation code section 550.021 further requires that the driver immediately stop the vehicle at the scene or immediately return to the scene if he does not stop at the scene.[4] *Id.* § 550.021(a)(1)–(2).

---

[4]We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013); *Curry v. State*, 30 S.W.3d 394, 404–05 (Tex. Crim. App. 2000).

## C. Evidence

Davis, a department manager at the Lake Worth Hobby Lobby, testified that on August 3, 2012, she was warned that three people—two men and a woman—had entered the store with a "flat bag"[5] and that she was asked to keep an eye on them because they were acting suspiciously. She and the store manager, Bobby Lizardo, identified Delacruz as one of the two men. Lizardo testified that he had been notified about Delacruz and his companions by a customer service manager when they first entered the store with the flat bag and said that the three were in the store for around twenty minutes. He saw them conversing together but did not hear what they said.

Davis followed Delacruz and the two others and saw the woman put two glass bowls in her bag while the two men stood around nearby at the end of the aisle, "kind of watching around the corners" and looking around nervously. After the woman took the two bowls, she and the two men started walking towards the exit. Davis notified Lizardo that the trio was leaving. Davis and Lizardo followed them past all points of sale. Delacruz and his companions made no effort to stop and pay for anything. Once they were outside on the sidewalk, Lizardo and Davis asked the woman to return the merchandise.

---

[5]Davis explained that a "flat bag" was a bag with nothing in it, alerting the store to the likelihood of shoplifting.

9

The woman asked Lizardo, "What merchandise?" When Lizardo described it to her, she refused to return it. Lizardo then grabbed the bag from her,[6] while Davis took the woman's wallet, which was in the woman's other hand. Delacruz and the other man kept walking to their car, which was three or four parking spots from the store's entrance; Lizardo said that once Delacruz was in the parking lot, he turned back to see what was happening before continuing to the vehicle. The woman followed and got into the front passenger seat. Delacruz was in the driver's seat, and the other man was in the back seat.

Lizardo positioned himself behind the car to take a photo of the license plate number with his cell phone. Davis stood on the driver's side of the vehicle, near the back bumper. Through the vehicle's raised window, she told the men they needed to return to the store because the police were coming. Delacruz began reversing the vehicle, slightly grazing Lizardo's shoulder, and Davis went around to the front of the car to try to get the license plate. Delacruz then moved the car forward through a parking spot in front of the vehicle.

When Delacruz drove forward, the car hit Davis's knee, causing her foot to bend backwards. Davis said that because she was being pushed back by the vehicle, she pulled herself onto the car using a windshield wiper, and that she otherwise would have been pushed under the front of the car. Delacruz

---

[6]The woman's bag contained two glass bowls worth around $5 each, a Hello Kitty activity kit, and a pink polyresin letter "P," all Hobby Lobby merchandise with a total value of around $20.

continued to drive the vehicle away, speeding up while Davis held onto the windshield wiper. Davis said that she had made eye contact with Delacruz and the woman while she was on top of the car's hood and that she saw the woman's lips shape the words, "Go, go, go[!]" When Delacruz threw his hands up, gesturing that he did not know what to do with Davis on the car, the woman reached over and yanked the steering wheel. The windshield wiper Davis was holding popped off, hit Davis in the face, and caused her to black out.

Lizardo testified that he had already been heading back to the store, unaware that Davis was on the vehicle, when he heard the screeching of tires and a thunk. Lizardo stated that after hearing the thunk, he "looked over to the direction of the screech of the tires and the thunk and it was [Davis] rolling off of the vehicle onto the pavement." He stated that the vehicle was twenty-five to thirty yards away at that point, towards the back of the parking lot. Lizardo saw the vehicle speed off towards the northwest exit of the shopping center.

When Davis regained consciousness, she was at the back of the store's parking lot. She described her injuries as "road rash on [her] elbow," a head wound, torn tendons on the top of her foot, and "road rash all the way down [her] back." Her head wound required three staples at the hospital. Before Davis was taken to the hospital in an ambulance, and while Lizardo was telling the police what had happened, Gonzalez, the other man who had been with the woman and Delacruz, returned to the scene on foot.

11

Lake Worth Police Officer Jerry Sallee, who had been dispatched to the Hobby Lobby about the theft in progress at around 5:10 p.m., testified that on his way to the store, he received information that two males and a female were fleeing the scene in a silver Kia. He arrived a few moments before the paramedics.

After Officer Sallee told Gonzalez that he needed to try to get Delacruz and the woman to return, Gonzalez called them on a cell phone and handed the phone to the officer. The first time they tried to call Delacruz, the woman and Delacruz hung up on the officer and then stopped answering. Around forty-two minutes after Officer Sallee first arrived on the scene, Delacruz and the woman returned. Delacruz was still in the driver's seat. Officer Sallee said that although he tried to get Delacruz's side of the story, Delacruz did not want to talk, and he eventually placed Delacruz under arrest. Officer Sallee also testified that an automobile is a deadly weapon.

**D. Analysis**

In his first issue, Delacruz complains that the State failed to prove that an underlying theft had occurred or that he had acted as a party to that offense. He also contends that, even if he had been implicated as a party, the criminal episode involving theft ended when the Hobby Lobby employees seized the property. In part of his second issue, he argues that Davis was to blame for her injuries and that conflicts between Davis's and Lizardo's testimonies cast doubt on Davis's testimony.

12

Delacruz relies in part on the trial judge's "not true" finding on revocation paragraph 7, in which the State alleged that Delacruz had committed the theft of a glass bowl from Lizardo.[7] However, a *completed* theft was not required to support Delacruz's aggravated robbery conviction. While "theft" requires unlawful appropriation of property with intent to deprive the owner and without the owner's effective consent, *see* Tex. Penal Code Ann. § 31.03(a), (b)(1), "robbery" requires intentionally and knowingly causing bodily injury "while in the course of committing theft," which includes conduct that occurs "in immediate flight *after the attempt* or commission of theft." *Id.* §§ 29.01(1), 29.02 (emphasis added); *see also White v. State*, 671 S.W.2d 40, 41 (Tex. Crim. App. 1984) ("No completed theft is required in order for the proscribed conduct to constitute the offense of robbery."). Further, for Delacruz to be held criminally responsible under the law of parties, the evidence only had to show that, with the intent to promote or assist the commission of the underlying theft, Delacruz had aided or attempted to aid the female who actually attempted to steal the glass bowls and other merchandise.[8] *See* Tex. Penal Code Ann. §§ 7.01(a), 7.02(a)(2); *Adkins*,

----

[7]The trial judge stated that he found paragraph 7 "not true because I think you've got to prove there's no consent to prove a completed theft."

[8]With regard to Delacruz's party argument, we addressed a similar set of circumstances in *Alexander v. State*, No. 02-05-00136-CR, 2005 WL 3436486, at *1–2 (Tex. App.—Fort Worth Dec. 15, 2005, no pet.) (mem. op., not designated for publication), which involved the sufficiency of the evidence to support a conviction for robbery with bodily injury under the law of parties. In that case, the appellant and his friend sat in a car in a shopping center parking lot; the appellant said that his friend told him to sit in the car while he went to look for a victim. *Id.*

274 S.W.3d at 877; *see also Gross*, 380 S.W.3d at 186.

Here, Davis and Lizardo both testified that they had been watching Delacruz and his companions while they were in the store. When Davis followed them, she saw the female companion put two glass bowls in her bag while Delacruz and Gonzalez stood nearby, watching around the corners and looking around nervously. Davis and Lizardo followed all three individuals out of the store. While Lizardo detained the woman and took her bag, Delacruz got into their vehicle and waited for the woman to get in before he started to drive away. Delacruz's vehicle hit Davis as he pulled forward and then, despite Davis pulling herself onto the hood of his vehicle to avoid being pushed under it, he did not stop the vehicle when she fell off the hood; instead, he sped away. Delacruz eventually returned to the scene with the woman.

Viewing the evidence in the light most favorable to the judgment, the State showed that Delacruz and his companions attempted a theft; that Delacruz acted as a party, first as a lookout and then as the getaway driver; and that hitting Davis with the car occurred "in the course of committing theft" because it

at *1, *5. Once a victim was selected, the appellant's friend unsuccessfully attempted to steal the victim's purse, knocking her down and dragging her in the process. *Id.* at *1, *3. After a bystander told them the police were on their way, the appellant told his friend, "[L]et's go," the friend got back into the car, and the appellant drove them away. *Id.* at *1, *3, *5. We concluded that the evidence was sufficient that the appellant knew he was assisting in the commission of the offense because he stated that he watched his friend get out of the car, walk over to the victim, and attempt to steal her purse and because he said that when he heard that the police had been called, he told his friend "[L]et's go," and then waited for him to get back in the car before driving off. *Id.* at *6.

14

occurred in the immediate flight after the attempt.[9]  *See* Tex. Penal Code Ann*.* § 29.01(1); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Winfrey*, 393 S.W.3d at 768.  Therefore, the evidence is sufficient to support the conviction, and we overrule Delacruz's first issue and the remainder of his second issue.[10]

In his third issue, Delacruz argues that the evidence is insufficient to show that he knew Davis had been injured, and he points out that he eventually returned to the scene.  He does not challenge the remaining elements of his failure-to-stop-and-render-aid conviction.

The record reflects that Delacruz intentionally drove a vehicle that became involved in an accident in which Davis was hurt and then drove away instead of immediately stopping or immediately returning to the scene.  The trial court could have reasonably inferred from the testimony about Delacruz's hitting Davis's knee and then her presence on, and then her absence from, the hood of the vehicle that Delacruz, the driver, was aware that she had suffered some injury.  The fact that Delacruz was urged to return to the scene and eventually did so

---

[9]Although Delacruz attempts to argue with the weight and credibility of Davis's testimony, the trial judge was the sole judge of these considerations, and we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for his.  *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Winfrey*, 393 S.W.3d at 768; *see also Sorrells*, 343 S.W.3d at 155 ("'When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.'").

[10]Further, the criminal episode did not end when the store regained its property.  Under the penal code, a "criminal episode" includes the commission of two or more offenses committed pursuant to the same transaction—here, the attempted theft and then Delacruz hitting Davis with the vehicle as he and his companions tried to escape.  Tex. Penal Code Ann. § 3.01(1) (West 2011).

does not satisfy the statutory immediacy requirement. *See* Tex. Transp. Code Ann. § 550.021; *Daugherty*, 387 S.W.3d at 665; *Byrd*, 336 S.W.3d at 246. Therefore, we conclude that the evidence is sufficient to support this conviction as well, and we overrule Delacruz's third issue.

## V. Conclusion

Having overruled all of Delacruz's issues, we affirm the trial court's judgments.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 10, 2014

16