# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-18-00512-CR
NO. 03-18-00513-CR
NO. 03-18-00514-CR

---

**Ronaldo Zabaleta-Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 167TH DISTRICT COURT OF TRAVIS COUNTY**
**NOS. D-1-DC-18-904014, D-1-DC-18-904011, & D-1-DC-18-904009**
**THE HONORABLE P. DAVID WAHLBERG, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Ronaldo Zabaleta-Martinez guilty of the aggravated kidnapping and aggravated family-violence assault of Michelle Rodriguez and the aggravated assault of Ramiro Araiza-Mendez.[1] *See* Tex. Penal Code §§ 20.04, 22.02. The jury sentenced appellant to confinement in the Texas Department of Criminal Justice for ten years, seven years, and three years, respectively, *see id.* §§ 12.32, .33, and the trial court ordered the sentences to run concurrently, *see id.* § 3.03(a). On appeal, appellant challenges the sufficiency of the evidence supporting his convictions. We affirm the trial court's judgments of conviction.

---

[1] Cause numbers D-1-DC-18-904009 and D-1-DC-18-904014 in the trial court and cause numbers 03-18-00514-CR and 03-18-00512-CR in this Court relate to the offenses involving Rodriguez. Cause number D-1-DC-18-904011 in the trial court and cause number 03-18-00513-CR in this Court relate to the offense involving Araiza-Mendez.

# BACKGROUND

The evidence at trial showed that Michelle Rodriguez met appellant through her employment. She believed him to be single, and they began a dating relationship. Through appellant, Rodriguez became acquainted with appellant's brother, Nelson Zabaleta-Martinez,[2] and their friend, Felix.[3] Rodriguez ended her relationship with appellant when Silvia Pineda, a woman claiming to be appellant's wife or girlfriend, began making threatening phone calls to Rodriguez. Appellant did not respond well to the breakup and continued to call Rodriguez until she blocked his number.

On the night of April 8, 2017, Rodriguez went to a dance club with friends. She saw appellant at the bar, but the two did not interact. She also saw Nelson and Felix before she left the club but had no contact with them there. Rodriguez left the club around 2:00 a.m., getting a ride home from her friend Ramiro Araiza-Mendez in his car. As they were driving around a curve in the apartment complex where Rodriguez lived, they encountered appellant in his pickup truck. Appellant stopped his truck across the path, blocking the way of Araiza-Mendez's car. Nelson came from the bed of the truck with an aluminum bat in his hand. He walked to the car and struck it multiple times with the bat, damaging the windshield and smashing out both the passenger's side window and the driver's side window. Rodriguez screamed, fearing that Nelson wanted to hurt her or get her out of the car.

Araiza-Mendez maneuvered his car onto the sidewalk and drove around appellant's truck to attempt to leave the apartment complex. However, the way out of the

---

[2] Because appellant and his brother share the same last name, we will refer to appellant's brother by his first name.

[3] Felix's last name does not appear in the record, so we refer to him by his first name.

parking lot was blocked by Nelson's car, a black Cadillac, from which Felix and Pineda emerged. After Araiza-Mendez's car was blocked by Nelson's car, appellant drove his truck up behind Araiza-Mendez's car, "sandwiching" the car in. At that point, appellant got out of his truck and approached Rodriguez in the passenger's seat. He grabbed her by the hair, causing her "strong" pain, and pulled her from the car "against [her] will." After he forced Rodriguez out of the car, appellant punched her "very hard" on her chest, causing her "very strong pain," while his brother struck her head twice with the bat. The combination of the punch and the bat strikes caused Rodriguez to fall to the ground.

At that point, appellant and his brother turned their attention to Araiza-Mendez, who was still in his car. Nelson approached Araiza-Mendez on the driver's side, attempting to hit him with the bat through the broken driver's side window. Appellant went inside the car through the passenger side—from where he had forcibly removed Rodriguez—and began repeatedly punching Araiza-Mendez. As he did so, appellant urged his brother to "pop him open, hit him."

When appellant and Nelson turned their attack to Araiza-Mendez, Felix and Pineda approached Rodriguez, pulled on her, and attempted to force her inside Nelson's car. Rodriguez confirmed in her testimony at trial that she was unable to move freely when they were holding her and pulling her and that they moved her toward the Cadillac against her will. She also expressed that she did not want to be confined or held in that way, that she did not want to be put into Nelson's car, and that she feared that she would be killed.

Ultimately, Felix and Pineda were unsuccessful in getting Rodriguez into Nelson's car because nearby residents of the apartment complex intervened, telling Felix and Pineda that they needed to let Rodriguez go and that they were calling the police. As Nelson,

3

Felix, and Pineda moved to leave, appellant grabbed Rodriguez by the neck and tried to pull her into Nelson's car. He hit her in the chest, choked her, and covered her mouth with his hand as he dragged her toward the car. Appellant let her go when the residents again intervened, telling him to let her go and threatening to call the police.

Appellant, Nelson, Felix, and Pineda fled the scene in Nelson's car and appellant's pickup truck, while Rodriguez and Araiza-Mendez remained to wait for police and medical assistance. Rodriguez was transported by ambulance to the hospital, where she was treated for injuries sustained during the encounter, including two head wounds that each required multiple staples.

Appellant and his brother were arrested six weeks after the encounter when they were apprehended by the fugitive task force.

## DISCUSSION

Appellant raises two points of error, both challenging the sufficiency of the evidence supporting his convictions. In his first point of error, he challenges the sufficiency of the evidence supporting his conviction for aggravated kidnapping. In his second point of error, appellant challenges the sufficiency of the evidence supporting his convictions for aggravated assault.

### Standard of Review

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the

4

verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Braughton v. State*, 569 S.W.3d 592, 607–08 (Tex. Crim. App. 2018); *see Musacchio v. United States*, — U.S. —, 136 S. Ct. 709, 711–12 (2016); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Thompson v. State*, 408 S.W.3d 614, 627 (Tex. App.—Austin 2013, no pet.); *see Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *see Braughton*, 569 S.W.3d at 608. We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018); *see Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016) (observing that reviewing court's role on appeal "is restricted to guarding against the rare occurrence when a fact finder does not act rationally" (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010))).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (explaining that "the jury is the exclusive judge of the facts"). Thus, when performing an evidentiary-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Braughton*, 569 S.W.3d at 608; *Arroyo*, 559 S.W.3d at 487; *see*

*Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012) (stating that reviewing court must not usurp jury's role by "substituting its own judgment for that of the jury"). Instead, we must defer to the credibility and weight determinations of the factfinder. *Braughton*, 569 S.W.3d at 608; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary*, 507 S.W.3d at 757; *see Musacchio*, 136 S. Ct. at 715 (reaffirming that appellate sufficiency review "does not intrude on the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (quoting *Jackson*, 443 U.S. at 319)). We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton*, 235 S.W.3d at 778); *accord Arroyo*, 559 S.W.3d at 487.

Because factfinders are permitted to make reasonable inferences, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *accord Johnson*, 560 S.W.3d at 226. The standard of review is the same for direct and circumstantial evidence cases. *Jenkins*, 493 S.W.3d at 599; *Nowlin v. State*, 473 S.W.3d 312, 317 (Tex. Crim. App. 2015).

**Aggravated Kidnapping**

A person commits the offense of aggravated kidnapping if "he intentionally or knowingly abducts another person" under certain aggravating circumstances. Tex. Penal Code § 20.04. The aggravating circumstances include acting with the specific intent to accomplish one of six purposes or using or exhibiting a deadly weapon during the commission of the offense.[4] *Id.* § 20.04(a)–(b). In this case, the State alleged three different theories of aggravated kidnapping, based on three alternative aggravating elements: that appellant used or exhibited a deadly weapon, a bat, during the commission of the offense, *see id.* § 20.04(b); that appellant intended to inflict bodily injury on Rodriguez, *see id.* § 20.04(a)(4); and that appellant intended to terrorize Rodriguez, *see id.* § 20.04(a)(5). The trial court submitted all three of these theories, as alleged in the indictment, to the jury in the court's jury charge. The jury charge also included an instruction on the law of parties. *See id.* § 7.02(a)(2).

For the purposes of kidnapping, "abduct" means "to restrain a person with intent to prevent [her] liberation by: (A) secreting or holding [her] in a place where [she] is not likely to be found; or (B) using or threatening to use deadly force." *Id.* § 20.01(2). Consequently, "abduct" includes two elements: the restraint of another, which is the *actus reus* of kidnapping,

---

[4] The six purposes listed in the aggravated-kidnapping statute are to:

(1) hold [the person] for ransom or reward;
(2) use [the person] as a shield or hostage;
(3) facilitate the commission of a felony or the flight after the attempt or commission of a felony;
(4) inflict bodily injury on [the person] or violate or abuse [the person] sexually;
(5) terrorize [the person] or a third person; or
(6) interfere with the performance of any governmental or political function.

Tex. Penal Code § 20.04(a).

and the specific intent to prevent liberation, which is the *mens rea* requirement. *Laster*, 275 S.W.3d at 521 (citing *Brimage v. State*, 918 S.W.2d 466, 475–76 (Tex. Crim. App. 1994)). Under the Penal Code, "restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person."[5] Tex. Penal Code § 20.01(1). "Restraint is 'without consent' if it is accomplished by force, intimidation, or deception." *Id.* § 20.01(1)(A).

In his challenge to the evidence supporting his conviction for aggravated kidnapping, appellant focuses on the restraint aspect of the element of abduction. He contends that the evidence is insufficient to show that he substantially interfered with Rodriguez's liberty because the movement or confinement involved was only for a short period of time over a short distance.

However, "[n]othing in the kidnapping statute requires the State to prove that a defendant moved a victim a certain distance or held [her] for a specific length of time." *Griffin v. State*, 491 S.W.3d 771, 775 (Tex. Crim. App. 2016) (citing *Reyes v. State*, 84 S.W.3d 633, 636–37 (Tex. Crim. App. 2002)); *see Megas v. State*, 68 S.W.3d 234, 238–39 (Tex. App.— Houston [1st Dist.] 2002, pet. ref'd) ("In defining restraint as requiring substantial interference with the victim's liberty, section § 20.01(1) does not require any quantitative amount of substantial interference."). "The law imposes no minimal requirement for restraint other than the interference with the person's liberty be substantial." *Griffin*, 491 S.W.3d at 775 (citing *Earhart v. State*, 823 S.W.2d 607, 618 (Tex. Crim. App. 1991), *judgment vacated on other grounds by*

---

[5] Each of the three separate manner and means for committing the instant offense was charged in two alternative paragraphs: one alleging restraint by restricting Rodriguez's movements by confining her; the other alleging restraint by restricting Rodriguez's movements by moving her from one place to another. *See* Tex. Penal Code § 20.01(1).

509 U.S. 917 (1993)); *see Rogers v. State*, 687 S.W.2d 337, 342 (Tex. Crim. App. 1985) (stating that "the proper measure is that the interference of liberty must be substantial"). While appellant maintains that "[t]he involuntary movement of the complainant over what could only be, at best, a mere matter of feet for a period of time less than five minutes cannot be said to be a significantly great hindrance of her liberty," the issue of substantial interference was for the jury to decide. "It is up to the jury to distinguish between those situations in which a substantial interference with the victim's liberty has taken place and those situations in which a slight interference has taken place." *Hines v. State*, 75 S.W.3d 444, 448 (Tex. Crim. App. 2002). "This can be established by looking at all of the circumstances surrounding the offense." *Id.*

The evidence at trial showed that appellant limited Rodriguez's movements, preventing her from going home to her apartment, first by blocking the path of Araiza-Mendez's car with his truck and then by "trapping" the car when Araiza-Mendez attempted to drive out of the apartment complex parking lot by sandwiching the car between his truck and Nelson's car. Appellant then forcibly removed Rodriguez from the car by physically dragging her out of the passenger seat by her hair. Next, he inflicted bodily injury to Rodriguez, punching her in the chest, while his brother struck her in the head with a bat. At that point, appellant's friend and wife (or girlfriend) pulled Rodriguez to Nelson's car, trying to put her in the backseat while appellant and his brother attacked Araiza-Mendez. Rodriguez's testimony reflected that she was not able to move freely when Felix and Pineda were holding her arms and legs pulling her to Nelson's car. When nearby apartment residents intervened, Felix and Pineda moved away from Rodriguez, but appellant returned to Rodriguez. He grabbed her from behind, choked her, covered her mouth with his hand, and pulled her towards Nelson's car in an attempt to get her inside it. The evidence reflected that Rodriguez struggled against appellant and the other

9

assailants throughout the encounter, yelling and screaming the entire time, and that she feared for her safety and her life. The sequence of events and witness descriptions at trial reflect a coordinated effort by appellant and the other assailants.

Thus, the evidence showed that, acting together with his brother, friend, and wife, appellant restricted Rodriguez's movements without her consent by both moving her from one place to another and by confining her. First, appellant impeded Rodriguez's progress home by stopping his truck in front of Araiza-Mendez's car, obstructing the car's path. He then confined Rodriguez when he trapped her in Araiza-Mendez's car by sandwiching the car between his truck and his brother's car. Next, he moved Rodriguez from one place to another when he forcibly removed her from the car, dragging her out by her hair. Then, after assaulting Araiza-Mendez, appellant again physically moved Rodriguez from one place to another when he grabbed her from behind, dragged her towards Nelson's car, and attempted to pull her inside. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) ("An abduction is a continuous, ongoing event." (citing *Weaver v. State*, 657 S.W.2d 148, 150 (Tex. Crim. App. 1983))).

Further, based on the evidence and reasonable inferences from it, a rational jury could conclude that in restricting Rodriguez's movements in the above-described ways, appellant and his companions substantially interfered with her liberty. The Penal Code does not define the phrase "interfere substantially," but the plain meaning of these terms together connotes a meaningful or consequential hindrance or obstruction. *See Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008) (stating that when Penal Code does not define word, we "turn to the common, ordinary meaning of that word"); *see, e.g.*, https://www.ahdictionary.com/word/search.html?q=substantial (defining "substantial" as "considerable in importance, value, degree, amount, or extent"); https://www.merriam-

webster.com/dictionary/interfere (defining "interfere" as "to interpose in a way that hinders or impedes"); https://www.ahdictionary.com/word/search.html?q=interfere (defining "interfere" as "to be or create a hindrance or obstacle" and "to intervene or intrude in the affairs of others; meddle"). The evidence, and reasonable inferences from it, reflect a considerable hindrance to Rodriguez's freedom of movement—she was prevented from going home, trapped in a car, then forcibly removed from the car, beaten by multiple assailants, and dragged to another car. *See Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014) (recognizing that jurors may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs of life when drawing inferences from evidence); *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012), *aff'd*, 410 S.W.3d 321 (Tex. Crim. App. 2013) (same). The evidence also showed that, throughout the encounter, she feared for her safety and her life.

Viewing the record in the light most favorable to the verdict, we conclude that a rational jury could have found that appellant interfered substantially with Rodriguez's liberty and, therefore, restrained her. *See, e.g.*, *Rodriguez v. State*, 646 S.W.2d 524, 525–26 (Tex. App.—Houston [1st Dist.] 1982, no pet) (concluding that evidence was sufficient to show restraint when appellant confined victim for two to four minutes inside car). Thus, based on the combined and cumulative force of the circumstantial evidence along with the reasonable inferences drawn from it, we conclude that a rational trier of fact could have found beyond a reasonable doubt the element of abduction.[6] Accordingly, we hold that the evidence was

---

[6] Because appellant restricts his sufficiency challenge to his aggravated-kidnapping conviction to the element of abduction, we do not discuss the sufficiency of the evidence as it relates to the remaining elements of the offense, and we limit our analysis to the evidence relevant to the particular sufficiency challenge that appellant raises here.

sufficient to support appellant's conviction for aggravated kidnapping. We overrule appellant's first point of error.

**Aggravated Assaults**

In challenging the sufficiency of the evidence supporting his convictions for aggravated assault, appellant contends that the evidence failed to show that he used or exhibited a deadly weapon. More specifically, he asserts that the evidence failed to show that he himself had a bat during the assaults against Rodriguez and Araiza-Mendez and, further, that it failed to show that he knew that his brother would use or exhibit a bat during the assaults.

As relevant to this case, a person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another." Tex. Penal Code § 22.01(a)(1). Such an assault is elevated to aggravated assault if, during its commission, the person uses or exhibits a deadly weapon. *Id.* § 22.02(a)(2).

A conviction for an aggravated offense must be supported by evidence that the defendant committed, or was criminally responsible for committing, the aggravating element. *Reed v. State*, 550 S.W.3d 748, 764–65 (Tex. App.—Texarkana 2018, no pet.); *Wyatt v. State*, 367 S.W.3d 337, 341–42 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd, untimely filed); *Wooden v. State*, 101 S.W.3d 542, 547–48 (Tex. App.—Fort Worth 2003, pet. ref'd); *see* *Stephens v. State*, 717 S.W.2d 338, 340 (Tex. Crim. App. 1986). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, the conduct of another for which he is criminally responsible, or both." Tex. Penal Code § 7.01(a). A person is criminally responsible for an offense committed by another if, "acting with intent to promote

12

or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

Each of the assault indictments in this case charged appellant as the primary actor in the aggravated assault, alleging that he "did then and there use and exhibit a deadly weapon, to-wit: a bat" during the assault. At the conclusion of the guilt-innocence phase of trial, the trial court submitted a jury charge authorizing the jury to find appellant guilty as a primary actor or as a party to the charged offenses.[7] Having been charged on the law of parties, the jury returned a general verdict for both assault offenses: "We, the jury, find Ronaldo Zabaleta-Martinez guilty of aggravated assault as charged in the indictment."[8] It is not possible to tell whether the jury found appellant guilty as a primary actor or as a party. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013) (observing that when alternative theories of liability are submitted in jury charge, guilty verdict will be upheld if evidence is sufficient on any theory authorized by jury charge); *Guevara v. State,* 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (same).

In this case, there is, as appellant concedes in his brief, some evidence to support appellant's conviction for aggravated assault against Rodriguez and Araiza-Mendez as a principal actor. One of the residents of the apartment complex who called 911 during the attack testified at trial that both of the men who assaulted the woman in the car—the driver of the truck *and* the one who emerged from the back of the truck—had a bat and that he saw both men hit the

---

[7] In addition to the party-liability instruction relating to promoting or assisting the commission of the offense, *see* Tex. Penal Code § 7.02(a)(2), the trial court instructed the jury on the conspiracy theory of party liability, *see id.* § 7.02(b). Appellant restricts his sufficiency challenge to the promoting-or-assisting theory of party liability and does not present any argument relating to the conspiracy theory of party liability.

[8] Also for each offense, the jury affirmatively answered a special issue concerning the use of a deadly weapon: "We, the jury, further find that Ronaldo Zabaleta-Martinez did use or exhibit a deadly weapon, a bat."

13

car with a bat. The testimony of a single eyewitness is sufficient to support a felony conviction. *Wimberly v. State*, No. 03-03-00726-CR, 2005 WL 2573524, at *3 (Tex. App.—Austin Oct. 13, 2005, pet. ref'd) (mem. op., not designated for publication); *see Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd). Thus, if the jury found this witness to be credible, *see Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) (observing that jury "may accept one version of the facts and reject another, and it may reject any part of a witness's testimony"); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (recognizing that jury, in its exclusive role as factfinder, "is entitled to judge the credibility of witnesses, and can choose to believe all, some, or none of the testimony presented"), evidence exists to support a jury finding that, as a primary actor, appellant used or exhibited a deadly weapon, a bat, during the commission of the assaults against Rodriguez and Araiza-Mendez.

Appellant acknowledges the above-described testimony but, complaining that the evidence was conflicting as to whether he had a bat during the encounter, disregards the testimony and instead relies on what he characterizes as "the most credible evidence." Admittedly, the majority of the evidence at trial—including the testimony of Rodriguez and Araiza-Mendez—reflects that appellant used his hands and fists during the assaults against Rodriguez and Araiza-Mendez while his brother used the bat. However, even in this scenario, the question is whether the evidence was sufficient to support a rational jury finding that appellant was criminally responsible for his brother's use or exhibition of the bat during the assaults.

14

Section 7.02(a)(2) of the Penal Code requires that a party to an offense intend to promote or assist "the offense." *See* Tex. Penal Code § 7.02(a)(2). "The intent to promote or assist in the commission of the offense goes to each element of the offense charged." *Adkins v. State*, 274 S.W.3d 870, 875 (Tex. App.—Fort Worth 2008, no pet.); *see Stephens*, 717 S.W.2d at 340. As noted previously, this includes the aggravating element of the offense. *See supra* p. 12. With respect to party liability for the use or exhibition of a deadly weapon as an element of an aggravated offense, there must be evidence that the defendant not only participated in the offense before or while a deadly weapon was used or exhibited, but did so while being aware that the deadly weapon would be or was being used or exhibited during the offense. *Williams v. State*, 05-14-00790-CR, 2016 WL 355115, at *7 (Tex. App.—Dallas Jan. 28, 2016, no pet.) (mem. op., not designated for publication); *Boston*, 373 S.W.3d at 839 n.7; *Wyatt*, 367 S.W.3d at 341; *Adkins*, 274 S.W.3d at 875. The issue here then is whether the evidence was sufficient to support a rational jury finding that appellant knew before or during the assaults that his brother would be or was using or exhibiting the bat when they assaulted Rodriguez and Araiza-Mendez.

To determine whether an individual has participated as a party to an offense, the reviewing court may examine "events before, during, and after the commission of the offense." *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012) (quoting *Wygal v. State,* 555 S.W.2d 465, 468–69 (Tex. Crim. App. 1977)); *accord Cary*, 507 S.W.3d at 758; *see Beier v. State*, 687 S.W.2d 2, 4 (Tex. Crim. App. 1985) (stating that in determining whether accused participated as party, "the court may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act"). Circumstantial evidence may suffice to show that one is a party to the offense. *Cary*, 507 S.W.3d at 758; *Gross*, 380 S.W.3d

15

at 186; *Beier*, 687 S.W.2d at 4. The evidence in the record here supports a finding that appellant was aware of the bat and knew that his brother would be or was using or exhibiting the bat during the assaults.

First, several witnesses testified that the assailants appeared to be working together. Further, the evidence showed that appellant frequently carried a bat in his truck. From the evidence of the coordinated attack and the relationship between the individuals involved, the jury could have inferred that appellant drove his brother in pursuit of Rodriguez and Araiza-Mendez after they left the club to assault them and abduct Rodriguez and, therefore, would have been aware of the manner in which the assailants planned to commit the offenses—including the use of the bat, which, the jury could have inferred, was readily available in appellant's truck because he routinely had one. Also, when appellant initiated the encounter by blocking Araiza-Mendez's path with his truck, Nelson immediately emerged from the back of the truck with a bat in his hand. The jury could have inferred that appellant obstructed Araiza-Mendez's path in order to allow his brother to use the bat against Rodriguez and Araiza-Mendez.

Furthermore, multiple witnesses—including Rodriguez, Araiza-Mendez, and nearby residents who intervened—described Nelson striking Araiza-Mendez's car with the bat and smashing the car's windows. The jury could infer from this testimony that the bat and Nelson's use of it were readily visible to others—including appellant—and that appellant knew that his brother had and was using and exhibiting the bat.

The trial evidence reflected that after appellant sandwiched Araiza-Mendez's car in between his truck and Nelson's car, he approached the occupants of the car. At that point—after Nelson had already repeatedly used the bat—appellant dragged Rodriguez from the car. Thus, evidence showed that appellant knew, before the bat was used on Rodriguez, that Nelson

16

had the bat and was using it during the encounter. Appellant then struck Rodriguez with his hands while Nelson hit her with the bat. This was sufficient evidence for the jury to rationally conclude that appellant, when becoming an active participant in the assaults after observing his brother brandishing the bat, would have become aware that the bat would be used or exhibited during the commission of the assaults against Rodriguez and Araiza-Mendez's when he dragged Rodriguez from the car exposing her to Nelson's attack.

Moreover, in addition to this substantial circumstantial evidence, the jury heard Rodriguez and Araiza-Mendez describe the assault of Araiza-Mendez. Both stated that, during the assault, they heard appellant urging his brother to use the bat against Araiza-Mendez. This testimony was direct evidence of appellant's knowledge of Nelson's use of the bat in assaulting Araiza-Mendez. The testimony also corroborated the circumstantial evidence that appellant knew at the time the assaults were initiated and while they were taking place that his brother was using and exhibiting a bat in perpetrating the offenses.

It is "the combined and cumulative force of all the evidence" in the record "when viewed in the light most favorable to the verdict" that must be considered in a sufficiency review. *Hooper*, 214 S.W.3d at 17; *accord Arroyo*, 559 S.W.3d at 487; *Bohannan v. State*, 546 S.W.3d 166, 178 (Tex. Crim. App. 2017). Looking at the cumulative force of the evidence in the entire record of this case in the light most favorable to the verdict, we conclude that a jury rationally could have found beyond a reasonable doubt that appellant was aware that a bat would be or was being used or exhibited in the commission of the assaults against Rodriguez and Araiza-Mendez. Thus, the evidence was sufficient to establish the aggravating element of the use or exhibition of a deadly weapon as it related to appellant as a party to the offenses.

17

Because the evidence was sufficient to show that appellant was criminally responsible for the aggravating element of the assault offenses—that is, that appellant himself used or exhibited a deadly weapon or that he was aware of the deadly weapon and knew that his brother would be or was using or exhibiting the deadly weapon during the assaults—we hold that the evidence was sufficient to support appellant's convictions for aggravated assault. Accordingly, we overrule appellant's second point of error.[9]

**CONCLUSION**

---

[9] At the end of his second point of error, appellant argues "in the alternative" to the sufficiency argument presented in his first point of error that his aggravated-kidnapping conviction should be reversed because the jury instructions for that offense, which presented multiple manners and means of committing the offense, did not require jury unanimity concerning whether appellant knew about the use or exhibition of a deadly weapon during the offense.

Jury unanimity as to the aggravated-kidnapping offense is not relevant to the question of whether the evidence was sufficient to support appellant's convictions for the charged aggravated assaults. This part of appellant's argument raises a distinct claim based on a different legal theory, which renders this point of error multifarious. *See Jenkins v. State*, 493 S.W.3d 583, 605 n.50 (Tex. Crim. App. 2016); *Davis v. State*, 329 S.W.3d 798, 820 (Tex. Crim. App. 2010).

Moreover, appellant does not explain how the submission of alternative legal theories renders the evidence supporting his aggravated-kidnapping conviction insufficient, nor does he acknowledge that, when alternative theories of liability are submitted in the jury charge, a guilty verdict will be upheld if the evidence is sufficient on any theory authorized by the jury charge. *See Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013); *Guevara v. State,* 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Thus, this aspect of appellant's argument is inadequately briefed. *See* Tex. R. App. P. 38.1(i); *see also Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (affirming that "an appellate court has no 'obligation to construct and compose [an] appellant's issues, facts, and arguments with appropriate citations'" (quoting *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008)); *Lucio v. State*, 351 S.W.3d 878, 896 (Tex. Crim. App. 2011) (stating that inadequately briefed point of error presents nothing for review).

For these reasons, we decline to consider this multifarious and inadequately briefed portion of appellant's second point of error.

Having concluded that the evidence was sufficient to support appellant's conviction for aggravated kidnapping, we affirm the trial court's judgment of conviction for aggravated kidnapping. Further, having concluded that the evidence was sufficient to support appellant's convictions for aggravated assault, we affirm the trial court's judgment of conviction for aggravated family-violence assault and the judgment of conviction for aggravated assault.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed: May 7, 2020

Do Not Publish